UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK C. DREWRY,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

No. 2:18-cv-2241-EFB

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 15 & 16. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.    Background

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since January 31, 2014.[1] Administrative Record ("AR"), ECF No. 11, at 212-17.

---

[1] Plaintiff subsequently amended the disability onset date to November 1, 2014. AR 17.

1

Plaintiff's application was denied initially and upon reconsideration. *Id.* at 133-37, 139-43. A hearing was subsequently held before administrative law judge ("ALJ") Daniel G. Heely. *Id.* at 37-63.

On September 12, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[2] *Id.* at 15-32. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since November 1, 2014, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

\* \* \*

3. The presumption of continuing nondisability created by *Chavez v. Brown* has been rebutted, and the prior ALJ decision is not accorded res judicata effect.

\* \* \*

4. The claimant has the following severe impairments: closed non-union scaphoid fracture right wrist; primary osteoarthritis left wrist with chronic pain; chronic right ankle sprain, deltoid ligament, with pain; chronic left ankle sprain, deltoid ligament, with pain; and post-traumatic stress disorder (20 CFR 404.1520(c)).

\* \* \*

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can, at most: occasionally balance, stoop, kneel, crouch, and climb ramps or stairs; but cannot ever crawl, or climb ladders, ropes or scaffolds. With the claimant's bilateral upper extremities, he can only engage in frequent, but not constant, handling and finger activities, meaning gross- or fine- manipulation type activities. The claimant cannot ever work around hazards (such as moving, dangerous machinery, or unprotected heights). He also cannot ever operate motor vehicles. The claimant is limited to work that is SVP one or two, or can be learned on the job in a month or less. The claimant finally can occasionally have contact with the public, coworkers, and supervisors.

\* \* \*

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

8. The claimant was born [in] 1967 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

12. The claimant was not under a disability, as defined in the Social Security Act, from January 31, 2014, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 17-32.

Plaintiff's request for Appeals Council review was denied on June 26, 2018, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

## II. Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. Analysis

Plaintiff argues that the ALJ erred in assessing his residual functional capacity ("RFC") by (1) failing to properly weigh the medical opinion evidence and (2) considering the limiting effects

4

of his carpel tunnel syndrome and the residual effects of his heart attack. ECF No. 15 at 16-25. As explained below, plaintiff's first argument warrants remand for further proceedings. The court therefore declines to address plaintiff's remaining argument.

A. <u>Relevant Legal Standards</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

B. <u>Background</u>

At the request of the state agency, plaintiff was evaluated by examining physician Dr. Satish Sharma in September 2015. AR 503-06. Plaintiff's primary complaints were bilateral ankle pain and right wrist pain. *Id.* at 503. He reported that he had three surgeries on his right wrist, with the last one a fusion that did not resolve his pain. *Id.* Plaintiff also noted that his wrist pain made it difficult to lift with his right hand, and his ankle pain made standing and walking for

5

long periods of time difficult. *Id*. at 504. On exam, plaintiff's right wrist was tender to palpation and dorsiflexion and palmar flexion were zero degrees. *Id*. Swelling and tenderness in both ankles were noted, as well as pain on dorsiflexion. *Id*. at 504-05. Dr. Sharma observed that plaintiff walked with a limp on the right lower extremity and was unable to perform toe walking and heel walking. *Id*. at 505.

Dr. Sharma diagnosed plaintiff with right wrist pain, bilateral ankle pain secondary to ankle sprain and ligamentous, and hypertension.[3] *Id*. He determined that plaintiff could walk and/stand for six hours in and eight-hour workday, sit without limitation, and was not limited in lifting and carrying. *Id*. Dr. Sharma further opined that plaintiff was not limited in holding, feeling, and fingering objects, but he could only occasionally push and pull with his right hand. *Id*.

Less than two weeks later, a state agency non-examining physician Dr. R. Dwyer reviewed plaintiff's medical records, including Dr. Sharma's report, and concluded that plaintiff was physically able to perform the full range of medium work. *Id*. at 99-100.

In November 2015, plaintiff sought treatment at the VA Medical Center's podiatry clinic for sudden left ankle pain after he felt a pop in his ankle. *Id*. at 544-46. Examination showed diffuse pain on palpation over left ankle with edema and underlying ankle instability. *Id*. at 545. Plaintiff was diagnosed with traumatic arthritis and ankle instability. *Id*. at 546. He was fitted for a CAM boot, an Arizona brace consult was ordered[4], and he was instructed to avoid extended walking to minimize pain and swelling. *Id*.

The following month, plaintiff was seen at the podiatry clinic by treating physician Dr. Lateef Lawal for complaints of chronic ankle pain. AR 533-35. Plaintiff reported that he was unable to stand for more than 45 minutes and that his ankles felt like they would "roll out on

---

[3] Dr. Sharma also diagnosed plaintiff with post-traumatic stress disorder. AR 505. Because plaintiff does not challenge the ALJ's finding with respect to his mental limitations, evidence regarding mental impairments is addressed only to the extent necessary to resolve the parties' arguments.

[4] The treatment records also noted that plaintiff was currently wearing an Arizona brace on his right ankle. AR 546.

him." *Id*. at 533. He was diagnosed with severe ligamentous laxity and chronic ankle and subtalar joint arthritis. *Id*. at 534. He was given a given a Marcaine and Kenalog injection in the right ankle and instructed to continue wearing an Arizona brace on his right leg and CAM boot on his left foot. Based on his examination, Dr. Lawal opined that plaintiff's pain prohibited him from ambulating for long periods of time and that he should not work.[5] *Id*.

In January 2016, plaintiff was seen for a hand surgery consultation. *Id*. at 529-31. Examination showed positive Tinel's and Durkan's signs in both wrists, and decreased sensation over radial aspects of plaintiff's left thumb was noted. *Id*. at 531. It was determined that plaintiff appeared to have a partial Scapholunate ligament tear. *Id*. Surgical options were discussed, and plaintiff was referred to occupational therapy for a splint. *Id*. Electromyography ("EMG") testing was also ordered to assess whether plaintiff had carpel tunnel syndrome. *Id*.

In February 2016, state agency non-examining physician Dr. E. Wong concluded, after a review of plaintiff's medical records; that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally kneel, crouch, and climb ramps and stairs, but never crawl or climb ladders, ropes, or scaffolds. *Id*. at 113-14. Dr. Wong further opined that plaintiff was limited to frequent handling and fingering bilaterally and pushing and/or pulling with the right upper extremity due to right wrist fusion and left wrist pain. *Id*.

That same month, plaintiff underwent the previously-ordered EMG nerve conduction study, which was normal. *Id*. at 751-53. Shortly thereafter, treating physician Dr. Paul Caviale observed that plaintiff's recent nerve conduction study was negative, but he determined that plaintiff has "electrically negative carpal tunnel syndrome, as Phalen's sign is present bilaterally." *Id*. at 595. Dr. Caviale also noted that plaintiff's impairments included a fused right wrist, arthritis in his left wrist, paresthesias in both hands, severe ankle arthritis, and low back pain

---

[5] The record reflects that Dr. Lawal is a resident podiatrist. However, the treatment record states that the examination was discussed in detail with the attending physician, Dr. Jeffrey Spank, who agreed in the assessment and treatment plan and cosigned the treatment note. AR 535. For ease of reference, the court will refer only to Dr. Lawal in address the findings and opinions in this treatment note.

resulting from wearing ankle braces. *Id*. at 595. He opined that due to these impairments, plaintiff was "severely limited in his prospects for employment" and that it "would be extremely difficult for him to find any employment at all in the future." *Id*.

In March 2016, treating physician Dr. Jagdish Patel prepared a disability evaluation report. *Id*. at 599-601. Dr. Patel diagnosed plaintiff with a closed non-union scaphoid fracture of the right wrist, osteoarthritis in the left wrist with chronic pain, chronic deltoid ligament sprain with pain in both ankles, and post-traumatic stress syndrome. AR 599-600. It was Dr. Patel's opinion that plaintiff was not able to lift more than 10-20 pounds occasionally with both hands, and that he was also limited to occasionally grasping, pushing and pulling. *Id*. at 600. He further opined that plaintiff was not able to stand or walk for more than 15 minutes due to his chronically sprained ankles. *Id*. He also concluded that plaintiff could climb up to two flights of stairs but that walking back down would be very painful. *Id*. With respect to plaintiff's mental impairment, Dr. Patel concluded that it would be difficult for plaintiff to concentrate and follow instructions. *Id*. He also noted that plaintiff's post-traumatic stress syndrome caused nightmares, difficultly sleeping, constraint crying, and binge drinking. *Id*. at 601. He also noted plaintiff could no longer watch the news without having bad dreams. *Id*. Based on the assessed limitations, Dr. Patel concluded that plaintiff was permanently disabled. *Id*. at 600.

In June 2016, plaintiff went to the emergency room after having intermittent chest pain, dizziness, and shortness of breath. *Id*. at 647-80. After being admitted to the hospital, it was determined plaintiff had a heart attack. He underwent a cardiac catheterization and stent to the right carotid artery and was discharged within two days. *Id*. at 647-49.

In a January 2017 treatment note, Dr. Patel stated that plaintiff had extensive osteoarthritis in his left wrist that was quite limiting and painful. *Id*. at 608. He also opined that plaintiff's wrist impairment interfered with daily activities, including the ability to grip, grasp, push, pull, and lift more than five pounds. *Id*.

In assessing plaintiff's RFC, the ALJ gave great weight to Dr. Sharma and the non-examining state agency physicians' opinions, while affording little weight to all other medical opinions. *Id*. at 26-28.

C. Discussion

Plaintiff argues that the ALJ erred by failing to provide specific and legitimate reasons for rejecting the treating opinions of Dr. Patel, Dr. Lawal, and Dr. Caviale.[6] ECF No. 15 at 16-23.

Turning first to Dr. Patel, the ALJ afforded little weight both the March 2016 and January 2017 opinions. As to the earlier opinion, the ALJ first concluded that "Dr. Patel's statements are in many ways nonspecific ('difficult')." AR 28. The only functional limitation Dr. Patel described as "difficult" was plaintiff's ability to concentrate and follow instructions. *Id.* at 600-01. Plaintiff, however, does not challenge the ALJ's assessment of his mental limitation. Consequently, the sufficiency of this reason is immaterial.

The ALJ also afforded little weight to Dr. Patel's opinion based on a finding that he relied heavily on plaintiff's subjective reports. *Id.* at 28. In reaching this finding, the ALJ explained that "the record does not suggest that Dr. Patel himself ever observed the claimant watching news, or experiencing nightmares." *Id.* at 28. This reason, like the first, specifically concerns Dr. Patel's opinion regarding plaintiff's mental limitations, which are not in dispute.[7]

The ALJ also concluded that Dr. Patel's opinion was inconsistent with the medical evidence of record, including observations that plaintiff had intact whole-body strength and intact coordination. *Id.* This justification completely ignores the basis for Dr. Patel's opinion. *See Orn v. Astrue*, 495 F. 3d 625, 635 (9th Cir. 2007) ("[A]n ALJ must evaluate the physician's assessment using the grounds on which it is based."). Dr. Patel's assessed limitations were not based on diminished strength or a lack of coordination. Instead, Dr. Patel specifically stated that

---

[6] Plaintiff's argument heading also contends that the ALJ erred in rejecting Dr. Kaufman's opinion "regarding the functional impact of [plaintiff's] physical impairments." ECF No. 15 at 16. But in the body of his argument section, plaintiff conceded that Dr. Kaufman did not provide an opinion as to his functional limitation. *Id.* at 16. Nevertheless, he argues that Dr. Kaufman's findings support Dr. Patel's opinion. *Id.* There is no need to address whether the ALJ provided sufficient reasons for rejecting Dr. Kaufman's opinion about his functional limitations, as plaintiff concedes she did not provide one.

[7] Nevertheless, if mental limitations were in dispute this reason would not be legally sufficient as it ignores that treating and assessing mental health often requires medical practitioners to rely on the patient's reports of symptoms. *See Ferrando v. Comm. of Soc. Sec. Admin.*, 449 F. App'x 610, 612, n. 2 (9th Cir. 2011).

plaintiff was limited to occasionally lifting 10-20 pounds and occasionally gripping, grasping, pushing, and pulling due to chronic hand pain and numbness. AR 600. As for his opinion that plaintiff could only stand or walk for 15 minutes, Dr. Patel attributed that limitation to plaintiff's chronic ankle sprains, not diminished strength or coordination. *Id*.

Lastly, the ALJ observed that Dr. Patel's statement that plaintiff is "disabled" goes to the ultimate issue of disability, which is a conclusion reserved for the Commissioner. AR 28. This reason alone is not a permissible basis for rejecting Dr. Patel's opinion that plaintiff is disabled, much less the specific functional limitations he assessed and relied upon as the basis for his opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("[A]n ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability," but instead must provide specific and legitimate reasons supported by substantial evidence).

The ALJ's reasons for rejecting Dr. Patel's January 2017 opinion that plaintiff's left wrist arthritis limits his ability to perform gross manipulation and lift more than five pounds are equally unavailing. The ALJ first observed that "Dr. Patel's treatment note does not indicate that Dr. Patel actually observed the claimant trying to lift on that occasion." AR 28. The proffered reason not only ignores that expertise possessed by doctors and the role they play in Social Security cases, it is also puzzling in light of the ALJ's decision. A cursory review of the decision reflects that the ALJ relied heavily on Dr. Sharm's examining report in assessing nearly all aspects of plaintiff's physical limitations. But like Dr. Patel's January 2017 treatment note, Dr. Sharma's report does not reflect that he personally observed plaintiff performing each of the limitations he assessed. For instance, his report does not suggest (for obvious reasons) that he observed plaintiff for more than sixteen hours to determine how long he sit in an eight-hour day and stand/walk in an eight-hour day.

The ALJ's remaining reasons also fall short of the specific and legitimate standard. The ALJ discounted the weight to be given to the opinion for the additional reason that he considered it inconsistent with objective medical evidence showing that plaintiff had intact coordination, intact sensation, and intact reflexes. He further observed that Dr. Patel's January 2017 treatment notes did not indicate plaintiff's strength or sensation was evaluated at that time. *Id*. at 28. In

reaching these findings, the ALJ once again ignores the basis for the opinion. Dr. Patel specifically stated that plaintiff had extensive osteoarthritis that was quite painful and limited plaintiff's ability to perform gross manipulation and lift more than five pounds. As previously stated, the ALJ was required to assess Dr. Patel's opinion based on ground on which it is based. *Orn*, 495 F. 3d at 635.

The ALJ's rejection of Dr. Lawal is also not supported by specific and legitimate reasons. In according little weight to Dr. Lawal's opinion, the ALJ observed that the physician's statement that plaintiff should not work goes to the ultimate issue of disability. AR 29. As already explained, this reason alone is not legally sufficient. *Ghanim v. Colvin*, 763 F.3d at 1161.

The sole remaining reason for rejecting Dr. Lawal's opinion was that it was inconsistent with the objective medical evidence, including records showing that plaintiff ambulated normally. AR 29. To support this finding, the ALJ cited two records. The first is a report from a comprehensive psychiatric consultative evaluation that noted plaintiff's posture and gait were normal. AR 499. The second is a treatment note from April 2017, in which plaintiff was evaluated for complaints of increased heart palpations less than a year after his heart attack. *Id*. at 715-19. Neither of these medical records concerned complaints or treatment related to plaintiff's ankles. Further, the ALJ's finding ignores extensive treatment records showing significant ankle impairments, as detailed above. *See, e.g., id*. at 504 (noting ankle swelling and tenderness in ankles and observing that plaintiff walked with a limp); 545 (noting diffuse ankle pain, instability, arthritis in ankles, prescription for CAM boot and Arizona brace, and recommendation to limit walking); 534 (directing plaintiff to continue wearing CAM boot and Arizona brace); 595 (documenting severe ankle arthritis).

Finally, the ALJ erred in failing to address Dr. Caviale's opinion that plaintiff's impairments made it extremely difficult for him to be employed. AR 595. While such an opinion is directly related to the ultimate issue of disability, it could not be ignored nor rejected absent specific and legitimate reasons. *Ghanim*. 763 F.3d at 1161; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence.").

/////

11

Based on the foregoing, the court finds that the ALJ failed to properly weigh the medical evidence of record. Accordingly, the matter must be remanded for further consideration. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

IV. Conclusion

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

DATED: September 30, 2019.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE